NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
MICHAEL R. SEW HOY (Cal. Bar No. 243391)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3314
    Facsimile:  (213) 894-0142
    E-mail:  Michael.R.Sew.Hoy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$178,200 in U.S. Currency; 12.28 Bitcoins; Various Parts and Equipment; and $699,152.72 in Bank Funds from Wells Fargo account ending in 3585, $201,282.25 in Bank Funds from Wells Fargo account ending in 6819, $100,059.84 in Bank Funds from Wells Fargo account ending in 7800, $81,068.07 in Bank Funds from Wells Fargo account ending in 1119, $70,386.75 in Bank Funds from Wells Fargo account ending in 4809, and $33,811.02 in Bank Funds from Wells Fargo account ending in 6465,<br><br>        Defendants. | NO. 2:20-cv-04500<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>[H.S.I.] |

/ / /

The United States of America brings this claim against the defendant assets, more particularly described below, and alleges as follows:

**JURISDICTION AND VENUE**

1.   This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this District pursuant to 28 U.S.C. § 1395(a).

**PERSONS AND ENTITIES**

4.   The plaintiff is the United States of America ("plaintiff" or the "government").

5.   The defendant assets (collectively, the "defendants") are:

     a.   $178,200 in U.S. currency (the "defendant currency");

     b.   one box of cellphone parts;

     c.   two bags of cellphone parts;

     d.   approximately 600 flex cables;

     e.   approximately 11 screens;

     f.   approximately 2,040 screens;

     g.   approximately 17 screens;

     h.   approximately 31 demo units;

     i.   approximately 41,451 batteries;

     j.   approximately 2,431 OCTA screens (collectively, the "defendant parts");

     k.   12.28 Bitcoins (the "defendant cryptocurrency");

2

l.   $699,152.72 in Bank Funds from a Wells Fargo account with the last four digits ending in 3585 ("WF 3585 Account") and held in the name of Gadgetfix Corporation;

m.   $201,282.25 in Bank Funds from a Wells Fargo account with the last four digits ending in 6819 ("WF 6819 Account") and held in the name of Chan Le and Thuy Tang;

n.   $100,059.84 in Bank Funds from a Wells Fargo account with the last four digits ending in 7800 ("WF 7800 Account") and held in the name of Tang and Huong Thu Thi Bien;

o.   $81,068.07 in Bank Funds from a Wells Fargo account with the last four digits ending in 1119 ("WF 1119 Account") and held in the name of Fix2Save, Inc.;

p.   $70,386.75 in Bank Funds from a Wells Fargo account with the last four digits ending in 4809 ("WF 4809 Account") and held in the name of EZ Elektronix Corporation; and

q.   $33,811.02 in Bank Funds from a Wells Fargo account with the last four digits ending in 6465 ("WF 6465 Account") and held in the name of EZ Elektronix Corp (collectively the "defendant bank funds").

The defendant currency and defendant parts were seized on or about April 16, 2019 by Special Agents of Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), during the course of the execution of federal search warrants at the residence of Chan Hung Le ("Le") in Orange County, California, in the Central District of California.  The defendant bank funds were seized on April 24, 2019 when HSI agents executed a federal seizure warrant from Wells Fargo.  The defendant cryptocurrency was seized on June 6, 2019 when HSI agents executed a federal search warrant.

3

6.   The defendant bank funds and defendant currency are currently in the custody of United States Customs and Border Protection in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.  The defendant parts are currently in the custody of Homeland Security Investigations in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.  The defendant cryptocurrency is currently in the custody of the US Marshals Service in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Chan Le, Thuy Tang, Huong Thu Thi Bien, Gadgetfix Corporation, EZ Elektronix Corp, EZ Elektronix Corporation, and Fix2Save, Inc. may be adversely affected by these proceedings.

**FACTS SUPPORTING FORFEITURE**

8.   Le bought, sold, and imported electronics parts under the business names "EZ Elektronix," "Wholesale Gadgetfix," "Gadgetfix Corp.," "Gadget Parts Direct," "US Mobile Parts," "Pac Depot," and "Fix2save Inc.," as well as the fictitious names "JV Trading Solutions" and "JVU Unlock."  Le primarily sold these parts via various storefronts on eBay and on a website found at https://gadgetfix.com.

9.   Le resided with Tang, a person whom he referred to as his wife, and who also was employed in Le's businesses.

10.  Le and Tang maintained four bank accounts at Wells Fargo Bank, the WF 3585 Account, WF 6465 Account, WF 4809, and the WF 1119 Account (collectively the "Wells Fargo Business Accounts").

11.  Le and Tang also maintained two additional accounts at Wells Fargo Bank, the WF 6819 Account and WF 7800 Account (together,

4

the "Wells Fargo Personal Accounts"). WF 6819 Account was held in Le's and Tang's names; WF 7800 Account was held in Tang's and Tang's mother's (Bien) names.

12.  Hongwei Du, also known as "Nick Du" ("Du") was a citizen of the People's Republic of China ("China"), residing in China. Du operated a company named Saduan Industrial Co., Limited ("Saduan"), later renamed Honape Industrial Co., Limited ("Honape"), a company registered in Hong Kong that exported electronics parts.

13.  A List Technology (H.K.) Co. Ltd. ("A List") was a company registered in Hong Kong and based in Shenzhen, China, that exported electronics parts.

14.  Mobile Communication Parts (H.K.) Development Co. Ltd. ("Mobile Communications") was a company registered in Hong Kong and based in Shenzhen, China, that exported electronics parts.

<u>The Law of Trademarks</u>

15.  A "trademark" is a word, phrase, symbol or design, or a combination thereof, which identifies and distinguishes the source of the goods of one particular manufacturer from those of other manufacturers. A trademark is often a valuable asset, equated with the "goodwill" of a business organization, which can influence consumers in purchasing decisions. A "word mark," "standard character mark," "design mark," and "mark drawing" are types of trademarks. Trademarks are registered for use in connection with particular types of goods or services.

16.  A trademark serves a variety of purposes. First, it avoids product confusion by allowing consumers to have confidence that two products for sale bearing the identical trademark were manufactured by the same company and will be of the same quality. Second, it

permits consumers to make an informed choice to purchase a name-brand good based upon past experience, word-of-mouth, brand loyalty, and advertising impact. Third, it enables consumers who experience a problem with the name-brand product they have purchased to seek recourse through the actual manufacturer by returning the goods to the seller or seeking warranty or other recourse through the manufacturer. Fourth, it allows the trademark owner to distinguish and protect its products by giving that company exclusive rights as the trademark owner. This permits the legitimate trademark owner to recoup investments of time, money, labor, and creativity and to profit from its endeavors in bringing a particular product to market.

17.   A counterfeit mark is: (a) a spurious mark used in connection with trafficking in goods; (b) that was identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the U.S. Patent and Trademark Office, and in use, whether or not the defendant knew such mark was so registered; (c) that was applied to or used in connection with the goods or services for which the mark was registered; and (d) the use of which was likely to cause confusion or mistake, or to deceive.

18.   Apple, Samsung, and Motorola were all companies that manufactured and sold cellular telephone and/or tablet hardware. The United States Patent and Trademark Office had registered on its principal register a number of trademarks for each company, including the following, all of which were in use at all times relevant to this Complaint:

a.   Trademark number 2,715,578, which registered the Apple logo design mark for use in connection with computer hardware and

software of a wide variety, including handheld and mobile computers and peripherals;

b.   Trademark number 3,679,056, which registered the Apple logo design mark for use in connection with, among other things, handheld mobile digital electronic devices and related items;

c.   Trademark number 3,928,818, which registered the Apple standard character mark for use in connection with computer hardware and software of a wide variety, as well as handheld mobile digital electronic devices and related items, including batteries;

d.   Trademark number 3,669,402, which registered the iPhone standard character mark for use in connection with handheld mobile digital electronic devices;

e.   Trademark number 2,214,833, which registered the Samsung design/word mark for use in connection with computer hardware of a wide variety, as well as mobile phones, components, and accessories;

f.   Trademark number 2,882,774, which registered the Samsung stylized word mark for use in connection with computer hardware of a wide variety, as well as mobile phones, components, and batteries;

g.   Trademark number 2,929,519, which registered the Samsung typed drawing word mark for use in connection with computer hardware of a wide variety, as well as mobile phones, components, and batteries;

h.   Trademark number 2,929,523, which registered the Samsung design/word mark for use in connection with computer hardware of a wide variety, as well as mobile phones, components, and batteries;

i.   Trademark number 4,792,754, which registered the Samsung standard character mark for use in connection with computer hardware and software of a wide variety, as well as mobile phones, components, and related items;

j.   Trademark number 4,792,755, which registered the Samsung design/word mark for use in connection with computer hardware and software of a wide variety, as well as mobile phones, components, and related items; and

k.   Trademark number 1,680,185, which registered the Motorola design/word mark and an associated symbol for use in connection with communications apparatuses of a wide variety, including cellular telephones and accessories.

19.  A "counterfeit product," for purposes of this complaint, is a cellular telephone component, tablet component, or other electronic device component bearing one or more counterfeit marks, to wit, marks identical with or substantially indistinguishable from one or more of the above-described trademarks registered by Apple, Samsung, or Motorola. The counterfeit marks were each likely to cause confusion or mistake, or to deceive.

<u>Conspiracy to Commit Fraud Against the United States,</u>

<u>Engage in Illegal Importation, and Traffic</u>

<u>in Counterfeit Goods</u>

20.  Beginning on a date unknown but prior to June 1, 2010, and continuing to on or about April 16, 2019, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, Le, Du, and others known and unknown, knowingly conspired and agreed with each other to:

8

a.   defraud the United States and an agency thereof by obstructing the lawful functions of United States Customs and Border Protection ("CBP") by deceitful and dishonest means, in violation of Title 18, United States Code, Section 371;

b.   intentionally traffic in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a); and

c.   knowingly and fraudulently import and bring merchandise into the United States contrary to law, in violation of Title 18, United States Code, Section 545.

21.   The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   Le would arrange with his suppliers based in China, including Du and others, including persons employed by A List and Mobile Communications (collectively, the "Chinese suppliers"), to purchase counterfeit components and accessories for cellular telephones, tablets, and other electronic devices.

b.   The Chinese suppliers would package the counterfeit goods, sometimes mixing them with non-trademarked items, and sometimes covering the trademarks with black tape, marker, or similar material, so that a quick inspection of the items would not reveal the trademark.

c.   The Chinese suppliers, at Le's direction, would arrange shipment to the United States from China via DHL or FedEx, and would place various different company or individual names on the packages so as to avoid attention from Chinese and United States customs authorities.

d.   Le would set up mail receiving and forwarding accounts with mail service providers in locations outside California,

including Oklahoma and Texas, using fictitious business names and the means of identification of one of his employees, J.V., so that the shipments would not be associated with Le or his identified businesses.

e.   Le would direct the Chinese suppliers to send packages containing counterfeit items to these mail service providers so that the packages would not go through the Port of Los Angeles and be inspected by CBP officers there.  Le would also direct the Chinese suppliers to put different recipient names and addresses on packages imported into the United States so as to avoid detection by customs authorities in China and the United States, including the names of his employees J.V. and M.N., and Tang and Tang's mother, Bien.

f.   Once the packages arrived at the mail service providers, Le and employees acting at his direction would instruct the mail service providers to forward the packages to locations in California where Le could retrieve them.

g.   Sometimes, defendant Le would ask the Chinese suppliers to change the address on the shipments of the counterfeit goods as soon as the packages had cleared United States customs, so that the packages would be immediately re-routed to him in California.

h.   Le would sell the counterfeit items he received from his co-conspirators via his storefronts on eBay and to individuals who came to his warehouse location.

i.   Le would advertise that he sold brand-name, new, genuine and/or "OEM" (original equipment manufacturer) consumer electronics components and accessories, and would list various trademarked brands and the items he had available for each, without

indicating that the goods were counterfeit and not authorized by the companies whose names and trademarks he used in advertisements and that appeared on the goods and packaging.

> j.   Le would receive payments from PayPal into the Wells Fargo Business Accounts for the items he sold on eBay.

22.   Le and/or Tang would periodically wire transfer payments from the Wells Fargo Business Accounts in the United States to accounts in Hong Kong controlled by the Chinese suppliers to pay for multiple shipments at a time, usually in round-dollar quantities.

23.   In furtherance of the conspiracy and to accomplish its objects, Le, Du, and others committed various acts on or about the following dates, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, including but not limited to the following:

> a.   In or around June and July 2010, Le imported from China and Hong Kong approximately 755 counterfeit Apple iPhone LCD screens in three shipments, without declaring the true contents of the packages to CBP.

> b.   On or about September 21, 2011, Le told a Westminster Police Department Detective, acting in an undercover capacity (the "UC"), that the UC could come to Le's business location in Westminster, California, to pick up cellular telephone parts.

> c.   On or about September 27, 2011, Le sold the UC three counterfeit Apple iPhone back covers, on which the "Apple" and "iPhone" logos had been covered with small strips of black tape.

> d.   On or about October 18, 2011, Le possessed at his business location in Westminster, California, approximately 7,200 counterfeit electronics parts bearing infringing Apple trademarks.

11

e.   On or about January 5, 2012, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications, in the amount of $95,000.

f.   On or about January 10, 2012, Le imported from China, under Tang's name, approximately 200 counterfeit cellular telephone parts bearing infringing Motorola trademarks, along with various other counterfeit cellular telephone parts, on most of which small pieces of black tape obscured the trademarks, without declaring the true contents to CBP and without identifying himself as the importer of record.

g.   On or about January 17, 2012, Le sent or caused to be sent a wire transfer from WF 4809 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $99,000.

h.   On or about February 15, 2012, Le possessed at his business location in Westminster, California, approximately 11,000 counterfeit electronics parts bearing various infringing trademarks.

i.   On or about February 15, 2012, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Saduan in the amount of $80,000.

j.   On or about March 1, 2012, Le imported six packages containing approximately 3,795 counterfeit cellular telephone parts, with small strips of black tape covering the brand and/or logo on each part, without declaring the true contents to CBP.

k.   On or about March 23, 2012, Le registered a new business name with the State of California, "Pac-Depot, Inc.," in the name of Tang's mother, listing himself as Chief Executive Officer.

l.    On or about April 24, 2012, Le, using the name and identification documents of J.V., opened accounts with mail receiving and forwarding businesses in Weatherford, Oklahoma, and Greenville, Texas for a fictitious business, "JV Trading Solutions."

m.    On or about January 11, 2013, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $90,000.

n.    On or about January 14, 2013, Le sent or caused to be sent a wire transfer from WF 4809 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $90,000.

o.    On or about April 8, 2013, Le sent or caused to be sent a wire transfer from WF 6465 Account to a bank account in Hong Kong controlled by his supplier Saduan in the amount of $50,000.

p.    On or about April 10, 2013, Le told Du via a chat application to stop shipment on an order of Sony-branded components because they should not be sent directly to California because they contained infringing trademarks.

q.    On or about May 7, 2013, Du sent Le a picture of an iPhone 5 digitizer assembly, and told Le that the assemblies Du had for sale were copies, but the display was the same as "original new" components.

r.    On or about June 12, 2013, Le, using an email account in the name of J.V., asked the mail receiving and forwarding business in Weatherford, Oklahoma, to let him know how much it would cost to forward the packages arriving that day for JV Trading Solutions to California via FedEx Overnight and via FedEx 2-day delivery.

s.   On or about June 25, 2013, Le told Du via a chat application to stop a package containing Motorola components being sent to California, because U.S. Customs would seize the package.

t.   On or about June 26, 2013, Le told Du via a chat application that Du could call DHL as soon as a package containing iPhone components destined for Oklahoma cleared customs, and change the address to California, so that Le could get the package faster.

u.   On or about December 3, 2013, Le asked Du via a chat application why Du's shipment to Oklahoma was so slow.  When Du responded that that was the fastest shipping channel since the goods had "logo," Le said that goods from his supplier from A List took the same amount of time, whether going to California or Oklahoma.

v.   On or about December 30, 2013, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $200,000.

w.   On or about December 30, 2013, Le sent or caused to be sent a wire transfer from WF 4809 Account to a bank account in Hong Kong controlled by his supplier Saduan in the amount of $400,000.

x.   On or about February 11, 2014, Le told Du via a chat application to use the names of his employees, J.V. and M.N., on packages being sent to Oklahoma so as to evade weight limits imposed by shipping agents.

y.   On or about April 1, 2014, Le told Du via a chat application to split up a shipment, and to send adapters with infringing trademarks to Oklahoma and cables without marks to California.

z.   On or about April 1, 2014, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong

Kong controlled by his supplier Mobile Communications in the amount of $250,000.

aa.  On or about April 17, 2014, Le told Du via a chat application that he wanted to order the same "copy" Motorola batteries he had ordered previously.

bb.  On or about September 15, 2014, after Du told defendant Le via a chat application that he would divide that day's shipment in two and send both shipments to Oklahoma, but needed two different names to put on the shipments, Le told Du to use M.N.'s name as the other name.

cc.  On or about December 30, 2014, Le sent or caused to be sent a wire transfer from WF 6465 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $200,000.

dd.  On or about January 5, 2015, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Saduan in the amount of $200,000.

ee.  On or about February 2, 2015, Du traveled to the United States for meetings with Le and another customer of counterfeit electronics goods.

ff.  On or about February 9, 2015, Le possessed at his business location in Lake Forest, California, approximately 148 counterfeit electronics parts bearing infringing Apple trademarks and approximately 7,000 counterfeit electronics parts bearing infringing Samsung trademarks.

gg.  On or about March 9, 2015, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $75,000.

15

hh.  On or about January 5, 2016, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $90,000.

ii.  On or about January 7, 2016, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $90,000.

jj.  On or about January 3, 2017, Le sent or caused to be sent a wire transfer from WF 6465 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $90,000.

kk.  On or about January 4, 2017, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $99,000.

ll.  On or about January 12, 2018, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $99,000.

mm.  On or about January 12, 2018, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier A List in the amount of $95,000.

nn.  On or about May 29, 2018, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Honape in the amount of $200,000.

oo.  In or around early November 2018, Le advertised for sale LCD touchscreen digitizers for Samsung Galaxy cellphones, including describing items as "OEM," "genuine," and "brand new in

Samsung Service box," but in fact sold non-genuine and counterfeit parts, and packaged the parts in counterfeit packaging.

pp.  On or about December 27, 2018, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Mobile Communications in the amount of $100,000.

qq.  On or about December 28, 2018, Le sent or caused to be sent a wire transfer from WF 3585 Account to a bank account in Hong Kong controlled by his supplier Honape in the amount of $100,000.

rr.  On or about April 16, 2019, Le possessed approximately 37,577 counterfeit Apple cellular phone batteries, approximately 600 counterfeit Apple cellular phone flex cables, approximately 2,040 counterfeit Motorola cellular phone LCD screens, and approximately 2,479 counterfeit Samsung cellular phones or phone parts at his warehouse in Irvine, California.

<u>Money Laundering Conspiracy</u>

24.  Beginning on a date unknown but prior to June 1, 2010, and continuing to on or about April 16, 2019, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, Le, Du, and others known and unknown, knowingly conspired and agreed with each other to:

a.   conduct one or more financial transactions with the intent to promote the carrying on of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), knowing that property involved in said financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely (i) trafficking in counterfeit goods, in violation of Title 18, United

States Code, Section 2320(a), and (ii) conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349;

b. conduct one or more financial transactions, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of said proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely (i) trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a), and (ii) conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349;

c. knowingly transport, transmit, and transfer monetary instruments and funds from places in the United States to places outside of the United States with the intent to promote the carrying on of specified unlawful activity, namely (i) trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a), and (ii) conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A);and

d. knowingly engaged in one or more monetary transactions involving criminally derived property of a value greater than $10,000, which property represented the proceeds of specified unlawful activity, namely (i) trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a), and (ii) conspiracy to commit wire fraud and mail fraud, in violation of Title

18, United States Code, Section 1349, in violation of Title 18, United States Code, Section 1957(a).

25.   During the relevant period, Le transferred money between and among the Wells Fargo Business Accounts and the Wells Fargo Personal Accounts in order to conceal the nature and source of money by hiding its origin.

26.   In furtherance of the money laundering conspiracy and to accomplish its objects, Le, Du, and others known and unknown committed, in addition to the acts alleged above, the following acts, among others, on or about the following dates, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere:

a.   On or about January 8, 2018, Le transferred or caused to be transferred approximately $100,000 from WF 6819 Account into WF 7800 Account.

b.   On or about January 18, 2018, Le transferred or caused to be transferred approximately $100,000 from WF 7800 Account into WF 3585 Account.

c.   On or about March 28, 2018, Le transferred or caused to be transferred approximately $50,000 from WF 3585 Account into WF 7800 Account.

d.   On or about April 9, 2018, Le transferred or caused to be transferred approximately $50,000 from WF 3585 Account into WF 7800 Account.

e.   On or about April 16, 2018, Le transferred or caused to be transferred approximately $140,000 from WF 7800 Account into WF 6819 Account.

f.    On or about April 19, 2018, Le transferred or caused to be transferred approximately $50,000 from WF 3585 Account into WF 7800 Account.

g.    In or around June, 2018, Le transferred or caused to be transferred approximately $100,000 from WF 6819 Account into WF 3585 Account.

h.    In or around July, 2018, Le transferred or caused to be transferred approximately $75,000 from three of the Wells Fargo Business Accounts (WF 3585 Account, WF 4809 Account, and WF 1119 Account) into WF 6819 Account.

i.    In or around December 2018, Le received approximately $2,129,708 into WF 3585 Account that represented proceeds of the sale of cellular phone and tablet components.

j.    In or around December 2018, Le sent or caused to be sent wire transfers from this same Wells Fargo Business Account (WF 3585 Account) to bank accounts in Hong Kong controlled by his suppliers Mobile Communications and Honape totaling approximately $1,000,000.

k.    In or around December 2018, Le received approximately $85,105 into WF 6465 Account that represented proceeds of the sale of cellular phone and tablet components.

l.    In or around December 2018, Le sent or caused to be sent wire transfers from this same Wells Fargo Business Account (WF 6465 Account) to a bank account in Hong Kong controlled by his supplier Mobile Communications totaling approximately $199,000.

<u>Conspiracy to Commit Mail and Wire Fraud</u>

27.  Beginning on a date unknown but prior to June 1, 2010, and continuing to on or about April 16, 2019, in Los Angeles and Orange

20

Counties, within the Central District of California, and elsewhere, Le, Du, and others known and unknown, knowingly conspired and agreed with each other to commit mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

28.   Specifically, Le would arrange with his Chinese suppliers to purchase non-branded components and accessories for cellular telephones, tablets, and other electronic devices.  Le would then advertise and sell these components and accessories on his eBay stores as "OEM" or "genuine" parts, when in fact those parts were not manufactured by or for the trademark holders, nor authorized for such manufacture by the trademark holders.

29.   Le would also advertise components as being new and packaged in brand-name service boxes, when in fact the packaging for such components was not genuine packaging, and bore counterfeit marks.

30.   In furtherance of the conspiracy and to accomplish its objects, Le, Du, and others known and unknown committed, in addition to the acts alleged above, various overt acts on or about the following dates, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, including but not limited to the following:

a.   In or around early November 2018, Le advertised for sale LCD touch screen digitizers for Apple iPhone 7 cell phones, including describing the items as "OEM," but in fact sold non-genuine parts.

b.   In or around early November 2018, Le advertised for sale LCD displays and touch digitizer screen assemblies for Samsung

Galaxy cellphones, describing the items as "OEM," and "brand new in Samsung Service box," but in fact sold nongenuine parts, and did not package them in genuine Samsung service boxes.

### Aggravated Identity Theft

31.   Beginning on an unknown date but prior to January 10, 2012, through on or about April 16, 2019, Le knowingly transferred, possessed, and used, without lawful authority, means of identification that Le knew belonged to other persons during and in relation to the offense of a Conspiracy to Commit Mail Fraud and Wire Fraud, a felony violation of Title 18, United States Code, Section 1349, as alleged above.

32.   The government alleges that the defendants were derived from, represent proceeds of, or were involved in the violations described hereinabove, rendering them, and each of them, subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

### Execution of April 2019 Search Warrants

33.   On April 16, 2019, HSI agents executed federal search warrants at a warehouse associated with Le's businesses and Le's residence.  Le was arrested during the execution of the search at the residence.  In addition to the defendant currency, defendant parts, and defendant cryptocurrency seized at the residence, agents recovered over 6,000 counterfeit Apple, Samsung, and Motorola cell phone repair parts and over 41,000 counterfeit Apple and Samsung lithium-ion cell phone batteries during the search of the [Subject Business].

34.   Printed packing lists and invoices recovered during the execution of a search warrant on April 16, 2019 from a warehouse

serving all of Le's businesses indicated Le was still purchasing
large volumes of cell phone parts from some of the same suppliers in
China and Hong Kong from which he had obtained the counterfeit
devices seized by HSI during the 2012 and 2015 search warrants.
Import and banking records corroborate that Le imported from some of
these suppliers in China on a continuous basis from at least 2012 to
2019, despite several law enforcement seizures of counterfeit goods
purchased from these suppliers during this time period.

The Related Criminal Prosecution

35.  On May 13, 2019, Le was charged in this district in an
Information alleging the violations of 18 U.S.C. §§ 371, 1956(h),
1349, and 1028A described above.  The Information includes three
forfeiture allegations providing notice that, in the event of a
conviction, the government will seek the criminal forfeiture of all
property, real or personal, constituting or derived from any proceeds
of the charged offenses, all property involved in any of the charged
money laundering offenses, and any property used or intended to be
used to commit the aggravated identity theft offenses charged in the
Information, listing the defendant bank funds as specific property
sought by the government for criminal forfeiture.  The government
filed a first Bill of Particulars on May 7, 2020 (*Le*, Docket Number
65) listing the defendant currency, defendant parts, and defendant
cryptocurrency as specific property sought by the government for
criminal forfeiture. That prosecution is ongoing.

**FIRST CLAIM FOR RELIEF**

36.  Plaintiff incorporates the allegations of paragraph 1-35
above as though fully set forth herein.

37.  Based on the above, plaintiff United States of America alleges that the defendants constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 545 (customs violations), 1028A (aggravated identity theft), 1349 (conspiracy to commit mail and wire fraud), and/or 2320 (international goods trafficking), which are specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 2323.

**SECOND CLAIM FOR RELIEF**

38.  Plaintiff incorporates the allegations of paragraph 1-35 above as though fully set forth herein.

39.  Based on the above, plaintiff United States of America alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (h), and/or 1957(a), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. §§ 1349 (conspiracy to commit mail and wire fraud) and/or 2320 (international goods trafficking). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendants;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

24

1          (d)   for such other and further relief as this Court may deem

2     just and proper, together with the costs and disbursements of this

3     action.

4     Dated: May 19, 2020                  NICOLA T. HANNA
                                           United States Attorney
5                                          BRANDON D. FOX
                                           Assistant United States Attorney
6                                          Chief, Criminal Division
                                           STEVEN R. WELK
7                                          Assistant United States Attorney
                                           Chief, Asset Forfeiture Section
8

9                                           /s/ *Michael R. Sew Hoy*
                                           MICHAEL R. SEW HOY
10                                         Assistant United States Attorney

11                                         Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## VERIFICATION

2      I, Tu Vo, hereby declare that:

3      1.    I am a Special Agent for Homeland Security Investigations.

4      2.    I have read the above Verified Complaint for Forfeiture and

5  know its contents.  It is based upon my own personal knowledge and

6  reports provided to me by other law enforcement agents.

7      3.    Everything contained in the Complaint is true and correct,

8  to the best of my knowledge and belief.

9      I declare under penalty of perjury that the foregoing is true

10  and correct.

11      Executed May _19_, 2020 in _Los Angeles_ , California.

12

13

          TU VO
14          SPECIAL AGENT - HSI

15

16

17

18

19

20

21

22

23

24

25

26

27

28